# IN THE CIRCUIT COURT OF MARYLAND
# FOR MONTGOMERY COUNTY

| | |
|---|---|
| **ISLAMIC EDUCATION CENTER OF MARYLAND, INC.**<br>7917 Montrose Road<br>Rockville, Maryland 20854<br><br>              *Plaintiff,*<br>   v.<br><br>ALAVI FOUNDATION<br>500 Fifth Avenue<br>New York City, NY 10110-0397<br><br>and<br><br>THE UNITED STATES OF AMERICA<br>Serve on:<br>United States Attorneys' Office<br>86 Chambers Street / 3rd Floor<br>New York City, NY 10007<br><br>and<br><br>THE UNITED STATES OF AMERICA<br>As Representative of the Private Claimants in the matter of 650 FIFTH AVENUE AND RELATED PROPERTIES (Case No. 08 Civ. 10934 (KBF), UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK)<br>Serve on:<br>United States Attorney's Office<br>86 Chambers Street / 3rd Floor<br>New York City, NY 10007 | CIVIL ACTION NO.: 439219-V<br><br><br>**COMPLAINT**<br><br>TO<br><br>**QUIET TITLE,**<br><br>   **AND FOR**<br><br>**DECLARATORY JUDGMENT, FRAUD, MONEY DAMAGES, AND OTHER RELIEF**<br><br><br>DEMAND FOR JURY TRIAL |

and

All Private Claimants not represented by the UNITED STATES OF AMERICA in the matter of 650 FIFTH AVENUE AND RELATED PROPERTIES [Case No. 08 Civ. 10934 (KBF), 09-cv-165 (KBF), 09-cv-166 (KBF), 09-cv-553 (KBF), 09-cv-564 (KBF), 09-cv-4614 (KBF), 09-cv-4784 (KBF), 10-cv-1627 (KBF), 10-cv-2464 (KBF), 11-cv-3761 (KBF), 12-mc-19 (KBF), 12-mc-20 (KBF), 12-mc-21 (KBF), 12-mc-22 (KBF), 13-mc-71 (KBF), 13-cv-1825 (KBF), 13-cv-1848] - UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK)

Serve on:
James L. Bernard
180 Madison Ave.
New York City, NY 10038-4982

and

John Does 1 through 100, inclusive
ADDRESSES UNKNOWN

and

ALL OTHER PERSONS UNKNOWN CLAIMING ANY RIGHT, TITLE, ESTATE, LIEN OR INTEREST IN THE MARYLAND PROPERTIES KNOWN AS 7917 Montrose Rd., Rockville, MD 20854, and 8100 Jeb Stuart Rd., Rockville, MD 20854.

*Defendants.*

**PRELIMINARY STATEMENT**

1. This a quiet title action in which Plaintiff is asking the court to review the evidence in connection with the ownership of two properties located in Montgomery County, Maryland, to wit:

    (a)      7917 Montrose Road, Rockville, Maryland 20854, and
    (b)      8100 Jeb Stuart Road, Rockville, Maryland 20854.
        (herein-after referred as to "Maryland Properties")

and issue a declaratory judgment as to the ownership of these properties.

2. Plaintiff is the original purchaser/owner, and has been the only occupier and resident of the Maryland Properties since they were purchased in 1981 and 1984, respectively (Exhibit "A" – Original Deed).

3. Plaintiff, Islamic Education Center of Maryland, Inc. is a not-for-profit religious organization and in good standing since 1979 under the laws of the State of Maryland (Exhibit "B").

4. At the present time, there are multiple parties who claim an interest in the properties by holding deed (Alavi Foundation), or judgments entered on October 4, 2017, by U.S. District Judge Katherine Forrest, awarding the U.S. Government a 17% interest and certain Private Claimants an 83% interest in the Maryland Properties (Exhibit "C" – forfeiture order; Exhibit "D" – turnover Order).

5. There were no findings of fact as to the true owner of these properties.

6. Accordingly, Plaintiff now brings this action to quiet the title and for monetary damages against Defendant Alavi Foundation.

**JURISDICTION**

7. The real properties that are the subject of this Complaint are located in Montgomery County. Accordingly, pursuant to Md. Code Ann., Real Property, §14-

108(a), the Circuit Court for Montgomery County has subject matter jurisdiction over this matter.

## VENUE

8. Venue is proper Pursuant to Md. Code Ann, Cts. § Jud.Proc. §6-202(7) because the real properties subject to this Complaint for Quiet Title are located in Montgomery County, Maryland.

## PARTIES

9. Plaintiff, Islamic Education Center of Maryland, Inc. (hereinafter, "Maryland IEC") is a not-for-profit religious organization incorporated in 1979 under the laws of the State of Maryland as a Non-Stock Corporation. It has been a 501(c)(3) exempt organization since 1981 (Exhibit "B").

10. Upon information and belief, Defendant Alavi Foundation is a not-for-profit corporation organized in 1973 in the State of New York with its primary office located at 500 FIFTH AVENUE, New York, New York.

11. Defendant United States of America is the proper defendant in this action because of the final judgment entered by the Honorable Katherine B. Forrest, U.S. District Court for the Southern District of New York, on October 4, 2017, in the matter of 650 FIFTH AVENUE AND RELATED PROPERTIES, granting forfeiture of the Maryland Properties identified above, to the United States of America (case No. 08 Civ. 10934, Exhibit "C").

12. Defendant United States of America, as a representative of the Private Claimants is a proper defendant because, upon information and belief, Defendant United States of America represented all or some of the Private

4

Claimants in the matter of 650 FIFTH AVENUE AND RELATED PROPERTIES (Case No. 08 Civ. 10934 (KBF), U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK).

13. Defendant, all Private Claimants not represented by the United States of America, are proper Defendants because of the final judgment entered by the Honorable Katherine B. Forrest, U.S. District Court for the Southern District of New York, on October 4, 2017, in the matter of in the related cases 09-cv-165 (KBF), 09-cv-166 (KBF), 09-cv-553 (KBF), 09-cv-564 (KBF), 09-cv-4614 (KBF), 09-cv-4784 (KBF), 10-cv-1627 (KBF), 10-cv-2464 (KBF), 11-cv-3761 (KBF), 12-mc-19 (KBF), 12-mc-20 (KBF), 12-mc-21 (KBF), 12-mc-22 (KBF), 13-mc-71 (KBF), 13-cv-1825 (KBF), 13-cv-1848, granting unknown percentage of the Maryland Properties to the private claimants (Exhibit "D" – Turnover order).

14. Defendants, JOHN DOES 1-100, might have current interests in the Maryland Properties. At the present time, their names and addresses are not known and once identified will be named.

15. Additionally, there might be other unknown claimants that claim RIGHT, TITLE, ESTATE, LIEN OR INTEREST in the Maryland Properties that their names and addresses are unknown and their claims not extinguished by operation of the law.

**FACTS**

16. Maryland IEC is a Section 501(c)(3), Non-Stock Corporation incorporated under the laws of the State of Maryland in 1979.

5

17. The real properties for which Maryland IEC is filing this action are located in Montgomery County, Maryland, to wit:

Property 1: 7917 Montrose Road, Rockville, Maryland 20854;
Property 2: 8100 Jeb Stuart Road, Rockville, Maryland 20854.

18. In 1979, the community of Muslims (mostly from Iran, Pakistan, and Afghanistan) in Montgomery County, Maryland began looking for property to be developed and used as a mosque for the community. Four members of the community were at the forefront of this project (Exhibit "E").

19. It took the founders of Maryland IEC more than two years and many lenders to finally purchase a foreclosed property from Government Services Saving & Loan, Inc. on January 30, 1981, below fair market value, for $1,500,324.35. (Exhibit "F" – Agreement of Sale)

20. Initially, this foreclosed property was known as 12010 Seven Locks Road, Potomac, Maryland, 20854 ("Property 1").

21. On February 25, 1980, the community paid the initial down payment of $50,000 and signed a letter of intent to purchase Property 1 (Exhibit "G" – payments).

22. Between December of 1980 and January 1, 1981, the community raised $185,285.94, which was applied toward the remainder of the purchase price and completion of construction (Exhibit "E", page 2).

23. To facilitate the transaction, Maryland IEC obtained a bridge loan/mortgage with the lender (Government Services Saving & Loan, Inc.)

requiring quarterly interest mortgage payments until the entire loan was paid off in four (4) years.

24. The Hud-1 Uniform Settlement Statement signed on January 30, 1981, (Exhibit "H" – Hud Form) identifies Maryland IEC as the purchaser and Government Services Saving & Loan, Inc. as the seller of the property.

25. Exhibit "I" shows that the bank retained $1,305,000 as a loan, requiring Maryland IEC to make quarterly loan payments of $12,500.

26. On January 23, 1981, Maryland IEC applied for an occupancy permit from Montgomery County to use the property for "Religious, Educational Activities" (Exhibit "J" – occupancy permit).

27. From January 30, 1981 through May 31, 1981, when the property was open for public, Maryland IEC spent considerable amount of funds raised from the community for completion of the construction of the building (Property 1) - Exhibits "E" & "G".

28. The first loan payment of $12,500 was made by Maryland IEC from funds raised from individual community members on April 30, 1981.

29. After construction of the mosque and the school, Saturday-Sunday classes formally started on May 31, 1981.

30. Maryland IEC paid all required federal and state taxes for its employees from the funds raised in the community.

31. During this period, one of the community members was a world-renowned and highly respected religious scholar, Dr. Mehdi Haeri-Yazdi. Dr. Haeri was also a member of the faculty at Georgetown University.

32. There are numerous affidavits confirming that, during spring of 1980, Dr. Haeri-Yazdi told the community and Maryland IEC board of trustees that he was given valuable land in Tehran ("Haeri-Yazdi Property") and that he was in the process of selling the property. He offered to donate the proceeds of about $2 million dollars from the sale of that land in Tehran, Iran for the purchase of the Maryland Property.

33. While waiting for the funds from Iran (proceeds from the sale of the Haeri-Yazdi's Property), the banks were unable to make the direct transfer of funds to Maryland IEC because of a sudden break down of diplomatic relationship between the United States and Iran.

34. When Maryland IEC purchased Property 1 on January 30, 1981, the Mostazafan Foundation (predecessor of Defendant Alavi Foundation) in New York was not aware of this purchase neither did it have any involvement with the community regarding the purchase of the property on Seven Locks Road (Property 1).

35. Unable to receive the funds in a timely manner from Iran, several community members contacted the Mostazafan Foundation (predecessor of Defendant Alavi Foundation) to act as a straw man until the $2,000,000 pledged to be donated by Dr. Haeri-Yazdi was received.

36. Subsequently, the Board of Maryland IEC decided to invite Mr. Manouchehr Shafei, President of the Mostazafan Foundation in New York, during the month of May 1981, to travel to Washington, DC so the community can explain the situation.

37. On the visit Mr. Shafie was accompanied by another officer of Mostazafan Foundation and the meeting took place at the residence of a community member, Mr. Nahidian, in McLean, Virginia.

38. During the meeting, the community members explained to Mr. Shafie that they expected to receive Dr. Haeri-Yazdi's $2 million dollar donation from Iran and that they wanted the Mostazafan Foundation to pay off the loan with Government Services Saving & Loan, Inc.

39. On or about July 22, 1981, the Mostazafan Foundation paid off the balance of the loan with Government Services Savings & Loan, Inc. which was about $1.35 million (Exhibit "I" – Loan payoff) and took title of Property 1.

40. It was always the understanding of the Board of Maryland IEC and community members that the Mostazafan Foundation was acting as a straw man, and once the funds were received from Iran, it would return the property to Maryland IEC as intended.

41. The transfer of title to the Mostazafan Foundation in July of 1981 was neither a *bona fide* sale nor an arms-length transaction.

42. In fact, after the transfer of title for Property 1 in July of 1981, Maryland IEC never paid any rent or signed any lease agreement with Mostazafan Foundation.

43. Since its' purchase of Property 1 on January 30, 1981, Maryland IEC has been the only occupier of the building, and since 2005 alone it has spent over $3,400,000 of the community funds in upkeep of the Maryland properties.

44. The second property identified as 8100 Jeb Stuart (Property 2), is a house adjacent to Property 1 and was purchased by Mostazafan Foundation in 1984 for $240,000. This property was exclusively used as the residence for the religious leader of Maryland IEC.

45. On or about November 12, 2009, the United States filed a verified Amended Complaint (*in-rem* action), 08 Civ. 10934 (KBF) (the "Complaint") in the U.S. District Court for the Southern District of New York, pursuant to Title 18, U.S. Code, Section 981(a)(1)(A) and (a)(1)(C), seeking the forfeiture of about nine (9) properties, including the Maryland Properties.

46. Since neither Maryland IEC nor the Maryland Properties were involved in any of the wrongdoings of which the Alavi Foundation was accused, Maryland IEC filed an innocent owner claim in that action (ECF No. 53, 991, 1026).

47. This innocent owner claim which was filed based on the available information on December 19, 2009, included an innocent owner claim as occupier.

48. Subsequently, certain Private Claimants holding judgments against, *inter alia,* the Government of Iran filed notices of claim against the properties (Defendants-in-rem, including the Maryland properties.

49. During the discovery period, Maryland IEC learned for the first time new information related to Property 1.

50. Specifically, on November 3, 2014, Maryland IEC learned for the first time from Mr. Shafie (President of Mostazafan Foundation during 1980 to 1984) that the Mostazafan Foundation did, in fact, receive the $2 million dollars donated by Dr. Haeri-Yazdi during November-December 1981 from Bank-e-Sepah in London but failed to disclose the donation because the Mostazafan Foundation needed the funds to complete construction on its New York City building (650 Fifth Avenue Building) – Exhibit "K" – affidavit of Mr. Shafie.

51. Maryland IEC filed supplemental claim in U.S. Court for Southern District of New York in December of 2014, claiming an ownership interest and demanding a refund of about $400,000 from Alavi Foundation, the balance of the $2 million it received in 1981 that was not disclosed to Maryland IEC (ECF No. 1026).

52. On May 2, 2014, at a status hearing held before Judge Katherine Forrest in the U.S. District Court for the Southern District of New York, she acknowledged the equitable rights and interest of Maryland IEC's innocent owner claims in the Maryland Properties and characterized them as "significant in terms of the assertions, in terms of value, and in terms of usage" (8:16-18 of

the transcript – not attached to this complaint).   Subsequently, the court sidelined Maryland IEC's claim and it was not permitted to participate in the jury and bench trial held during the months of May-June 2017.

53.     After a month-long jury trial in which Maryland IEC was not a participant, the jury returned a verdict in favor of the U.S. Government and against the Alavi Foundation and, among others, awarded the Government a 17% interest in the Maryland Properties (Exhibit "C" - a copy of jury verdict is not attached at this time).

54.     According to the available record, after the jury trial, Judge Katherine Forrest held a bench trial and issued an opinion and order on June 29, 2017, in which she gave the remaining 83% of the Maryland Properties to Private Claimants (turnover order – Exhibit "D") without giving any opportunity to Maryland IEC to present its evidence of ownership.

55.     Before Final Judgment was issued on October 4, 2017, the U.S. Government filed a motion to dismiss several pending claims, including the claims by Maryland IEC.  The U.S. Government argued that since it did not seek to forfeit the tenancy claim, the Maryland IEC claim as tenant is moot and that Maryland IEC's ownership should be dismissed because it was filed late.  Maryland IEC filed an opposition.

56.     On September 1, 2017, the Court dismissed Maryland IEC's tenancy claim as moot and dismissed its ownership claim as untimely;

accordingly there was no finding of fact as to Maryland IEC's ownership claim (Exhibit "L" – September 1, 2017 Order).

57. The Final Judgment of October 4, 2017, was appealed by Alavi Foundation and Maryland IEC to the Second U.S. Circuit Court of Appeals on October 13, 2017 (Case No. 17-3304; Exhibit "M" – Notice of Appeal).

## COUNT I
### *QUIET TITLE*

58. Plaintiff alleges and incorporates by reference herein each and every allegation set forth above in Paragraphs 1-57.

59. With the financial and other efforts of the community, Plaintiff, Maryland IEC purchased Property 1 on January 30, 1981. It held title to the property on July 22, 1981 when Mostazafan Foundation (predecessor of Defendant Alavi Foundation) paid off the existing loan totaling about $1.35 million dollars and took title of the Property 1.

60. Shortly after the transfer, Mostazafan Foundation received $2,000,000 in the form of a wire transfer from Bank-e-Sepah in London (Exhibit "K" – affidavit of Shafie).

61. This money was donated by a community member, Dr. Haeri-Yazdi and was intended to repay the Mostazafan Foundation and spend the balance in developing Property 1.

62. According to Mr. Shafie, President of Mostazafan Foundation during that time, Mostazafan Foundation never disclosed the receipt of the funds from

Dr. Haeri-Yazdi to anyone, including the Maryland IEC, and used the funds to complete the construction of the 650 Fifth Avenue building in New York.

63. Plaintiff, Maryland IEC, became aware of this information on or about November 3, 2014.

64. There have been no findings of fact as to the ownership of the Maryland properties, including Property 1.

65. As demonstrated above and in the affidavit attached hereto, the Maryland IEC has been in actual peaceable possession of the Maryland Properties since their purchase and was not accused of any wrongdoing.

66. Plaintiff never paid rent and did not sign any lease agreement prior to transfer of title from Mostazafan to Alavi Foundation by quit claim for $10 in 1995.

67. Regardless of the reason for the Mostazafan Foundation/Alavi Foundation failure to return title to the Maryland Properties to Plaintiff, its rightful owner, Plaintiff asserts that no third party has any interest in the properties superior to that of Plaintiff.

68. Accordingly, Maryland IEC brings this action to remove the existing cloud on its title with respect to the Maryland Properties.

## COUNT II
### *DECLARATORY JUDGMENT*

69. Plaintiff alleges and incorporates by reference herein each and every allegation set forth above in Paragraphs 1-68.

70. This request for declaratory judgment is made under Md. Ann. Code, Cts. and Judicial Proceeding Article § 3-406 and § 3-409(e) (2010).

71. There is a justiciable issue requiring the Court to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations among/between the parties.

72. Other than the action for Quiet Title in Count One, there is no adequate remedy available at law or equity to resolve the question of rights, status, and legal relationship among/between the Maryland Corporation and the Defendants with unknown interests to the real property at issue.

73. Accordingly, Plaintiff requests that this Honorable Court: (1) determine and adjudicate the rights and liabilities of the parties with respect to the Maryland Properties; (2) find and declare that Plaintiff is the true and rightful fee simple absolute owner of all real property listed in this Complaint; and (3) order a speedy hearing in this matter.

## COUNT III
### *FRAUD*
### **(AGAINST ALAVI FOUNDATION ONLY)**

74. Plaintiff alleges and incorporates by reference herein each and every allegation set forth above in Paragraphs 1-73.

75. In 1981, Defendant Alavi Foundation/Mostazafan Foundation received $2,000,000 that had been donated by Dr. Haeri-Yazdi, via wire-transfer from Bank-e-Sepaph in London, England.

76. This fund was intended to repay Mostazafan Foundation for the $1.35 million it had paid for the balance of the loan on Property 1.

77. Mostazafan/Alavi Foundation received the funds (Exhibit "G" – Mr. Shafie affidavit) but knowingly and intentionally failed to disclose this material information to Maryland IEC.

78. Mostazafan/Alavi Foundation received $2,000,000 but also knowingly and intentionally failed to re-deed the properties back to its rightful owner, Maryland, IEC.

79. Under the circumstances, the material omissions and material misrepresentations by the Defendants were/are malicious.

80. As a direct and proximate cause of Defendant Alavi's material omissions and material misrepresentations, Plaintiff Maryland IEC has suffered damages, which will be proven at trial.

81. Plaintiff first learned of the actions of the Defendant, including their failure to disclose and the fraud committed upon Plaintiff in November of 2014.

### COUNT IV
### *MONEY DAMAGES AND CLAIM OF LIEN*
### (AGAINST ALAVI FOUNDATION ONLY)

82. Plaintiff alleges and incorporates by reference herein each and every allegation set forth above in Paragraphs 1-81.

83. Believing it was the rightful owner of the Maryland Properties, over the years, Maryland IEC and community has spent over $5,000,000 for upkeep and improvement of the Maryland Properties.

84.     If for any reason title to the Maryland Properties is not returned to its rightful owner, Maryland IEC, it will be seeking monetary damages in an amount exceeding $5,000,000, to be proven at trial.

*WHEREFORE*, for all the reasons stated herein, Plaintiff prays:

1.      On Count One & Two, this Honorable Court issue an order Declaring Plaintiff is the fee simple owner of all rights, title, and interests in and to the described Maryland Properties;

2.      Declaring none of the Defendants possesses any right, title, estate, interest in, or lien on the described Maryland Properties;

3.      On Count Three, Defendant Alavi Foundation committed willful and intentional fraud by failing to disclose the receipt of $2,000,000 which was intended for Maryland IEC, from Bank-e-Sepah in London in 1981 and failed to re-deed the property back to Maryland IEC.

4.      For such further relief as this Honorable Court deems appropriate.

Respectfully submitted,

**Address:**
Saeid B. Amini
730 24th Street, NW, Suite One         Saeid B. Amini
Washington DC   20037                  Attorney for Plaintiff
202-306-9444
202-965-4446 (fax)
sbajd98@yahoo.com